UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHARLES E. BENEDICT; and :
AUTOMATIC LIGHTSWITCH, L.L.C., :
:
    *Plaintiffs*, :
:
vs. :   Civil Action No. 4:00 cv 483-WS
:
GENERAL MOTORS CORPORATION, :
and DELPHI AUTOMOTIVE SYSTEMS, :   Honorable Robert L. Hinkle
:
    *Defendants*. :
_____:

# GM's REPLY ON MOTION FOR INVALIDITY SUMMARY JUDGMENT UNDER 35 U.S.C. § 102(g)

~~CONFIDENTIAL~~

~~FILED UNDER SEAL~~

(SEALED)
ATTACHMENT
Filed in Separate Folder
(PLDG.#____)

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

01 NOV -5 PM 5:01

FILED

- 129 -

# **TABLE OF CONTENTS**

|      |                                                                                                                                                                                       | Page |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | SUMMARY OF REPLY                                                                                                                                                                      | 1    |
| II.  | GM's REPLY                                                                                                                                                                            | 3    |
|      | A. *Dow* And *Checkpoint* Control The Concealment Issues Raised In This Case                                                                                                          | 3    |
|      | B. Under *Dow*, Delay In Commercialization Is Tested As "Inferential" Concealment                                                                                                     | 4    |
|      | C. Benedict Has Failed To Present Any Evidence Of Inferential Concealment Other Than Mere Delay — Which Is Insufficient As A Matter Of Law On Commercialization Disclosure Cases Like This Case | 5    |
|      | D. Benedict Has Failed To Present Any Evidence Of Intentional Concealment                                                                                                             | 7    |
|      | E. Benedict's "Prior Invention" And "Inventorship" Arguments Do Not Raise A Genuine Issue Of Material Fact                                                                            | 10   |
| III. | CONCLUSION                                                                                                                                                                            | 13   |

## I. SUMMARY OF REPLY

GM showed in its opening Memorandum that GM conceived this invention in 1991, reduced it to practice in 1993, and commercialized it in 1994. These dates long precede Benedict's 1994 conception and 1995 constructive reduction to practice (via filing a patent application), establishing GM as the first inventor.

Benedict accordingly opposes by arguing concealment. Benedict's entire concealment attack depends on the premise that the absence of public disclosure during commercial development constitutes forbidden concealment — but that is not the law. Only two Federal Circuit cases have addressed alleged concealment as a result of commercial development by the first inventor. *Dow Chemical Co. v. Astro-Valcour, Inc.*, ___ F.3d ___, 2001 WL 1143284, *7-8 (Fed. Cir. 2001); *Checkpoint Systems, Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761-63 (Fed. Cir. 1995). Both held: "In cases in which the invention is disclosed to the public by commercialization, courts have excused delay upon proof that the first inventor engaged in reasonable efforts to bring the invention to market." *Dow*, 2001 WL 1143284, *8; *Checkpoint*, 54 F.3d at 762.

Benedict makes much of GM's failure to file a patent application. But there is **no** duty to file a patent application. *Checkpoint*, 54 F.3d at 763. Consequently, interference cases, arising between two patent applications in the United States Patent and Trademark Office ("PTO"), do not address the commercial situation present here, where the prior inventor (GM) did not file for a patent, but proceeded instead straight to the market. Thus, the interference cases are generally irrelevant to the facts of this case.

Because the record is undisputed that GM made "reasonable efforts to bring the invention to market" in its Cadillac models, there was no concealment by GM under *Dow* and *Checkpoint*. Summary judgment of invalidity under § 102(g) is required.

In a summary argument in the final pages of his brief, Benedict also challenges GM's proof of "prior invention" and "inventorship." Neither of these arguments is sufficient to defeat summary judgment.

## II. GM's REPLY

A. *Dow* And *Checkpoint* Control The Concealment Issues Raised In This Case

*Dow*, citing *Checkpoint*, contrasts delay of the first inventor in filing a patent application in the context of PTO interference practice with delay when the first inventor does not file a patent application but discloses the invention to the public through commercialization after the second inventor files a patent application:

> We note that, unlike this case, both *Lutzker* and *Young* involved interference disputes between two inventors who had filed patent applications. The issue in those cases was whether the prior inventor had abandoned, suppressed, or concealed his invention between first making it and filing his patent application. In *Lutzker*, we held a long delay between a prior inventor's first reduction to practice and subsequent filing of a patent application may be excused if the inventor worked during that period to improve or perfect the invention disclosed in the patent application, *Lutzker*, 843 at 1357 *accord*, *Young*, 489 F.2d at 1281, but if the inventor's activities during that period were directed only to commercialization and were not "reflected in his patent application," they could not be excused. *Lutzker*, 843 at 1368, *accord*, *Young*, 489 F.2d at 1281. In *Checkpoint*, 54 F.3d at 762-63, we distinguished *Lutzker* on the ground that *Checkpoint* involved a prior inventor who did not file a patent application but who publicly disclosed his invention by commercializing it four years after first making it. In *Checkpoint*, we stated that "[t]he public thus received the benefit of [the prior inventor's] invention promptly when Checkpoint's integral commercial system was brought to market. [The prior inventor] was under not duty to file a patent application and, although he may have failed to establish his own right to a patent, there was no lack of diligence in his attempts to make the benefit of his invention available to the public." *Id.* at 763.

*Dow*, 2001 WL 1143284, *7.

This "patent application/commercialization" distinction is critical. The only applicable Federal Circuit cases on commercialization delay like GM's for a system and method disclosed on commercialization are *Dow* and *Checkpoint*. *Dow* followed *Checkpoint*, both holding that the question is whether GM "engaged in reasonable efforts to bring the invention to market." *Dow*, 2001 WL 1143284, *8; *Checkpoint*, 54 F.3d at 762.

In contrast to *Dow, Checkpoint*, and the instant case, in *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031 (Fed. Cir. 2001), the invention involved a secret **process** invention **not** disclosed with the commercialization of the commercial **product**. The facts (secret process invention) and holding ("resumed activity" prior to second inventor's invention date) of *Apotex* are not raised in the facts of GM's prior invention defense. *Apotex* is inapposite to the resolution of the question whether GM's commercialization delay was concealment.

Because *Dow* and *Checkpoint* are the only Federal Circuit cases addressing alleged concealment arising from commercial development of the invention, those cases control the alleged concealment analysis here.

### B.   Under *Dow*, Delay In Commercialization Is Tested As "Inferential" Concealment

Benedict table pounds that GM's delay is active, intentional concealment. But the intentional standard is not applicable to cases of delay in commercialization which, under *Dow*, are tested by the inferential concealment standard. *Dow*, 2001 WL 1143284, *6.

Moreover, this is not a case of active, intentional concealment. The facts here do not meet the requirements for "intentional" or "inferential" concealment set out in *Dow*:

-4-

> Our case law distinguishes between two types of abandonment, suppression, or concealment. *Apotex*, 254 F.3d at 1038. The first is implicated when an inventor actively abandons, suppresses, or conceals his invention from the public. *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1567, 39 USPQ2d 1895, 1901 (Fed.Cir.1996). The second occurs when abandonment, suppression, or concealment may be inferred based upon the prior inventor's unreasonable delay in making the invention publicly known. *Int'l Glass Co. v. United States*, 408 F.2d 395, 403, 159 USPQ 434, 441 (Ct.Cl.1969). **The latter type is allegedly involved here.** The failure to file a patent application, *Peeler v. Miller*, 535 F.2d 647, 654, 190 USPQ 117, 121 (CCPA 1976), to describe the invention in a published document, *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 372-73, 48 S.Ct. 380, 72 L.Ed. 610 (1928), or to use the invention publicly, *Lutzker v. Plet*, 843 F.2d 1364, 1367, 6 USPQ2d 1370, 1372 (Fed.Cir.1988), within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment. *See also Int'l Glass*, 408 F.2d at 403 (collecting cases); *Paulik v. Rizkalla*, 760 F.2d 1270, 1274-75, 226 USPQ 224, 227 (Fed.Cir.1985) (collecting cases).

2001 WL 1143284, *6 (boldface added).

C. **Benedict Has Failed To Present Any Evidence Of Inferential Concealment Other Than Mere Delay — Which Is Insufficient As A Matter Of Law On Commercialization Disclosure Cases Like This Case**

The undisputed evidence is that GM's development of the 1995 and 1996 Cadillacs was reasonable, and consistent with its normal development schedules. (Exhibit G[1] to GM's opening memorandum, Nattrass Decl., ¶¶ 5-17, especially ¶¶ 5, 9, 11, and 17.) Benedict presented **no** contrary evidence. Per *Dow*, "[b]ecause the undisputed evidence shows that [GM]

---

[1] Exhibits A-V refer to Exhibits attached to GM's opening Memorandum in support of this motion. Exhibits D1, E1, and W-Z are attached to this Reply Memorandum.

-5-

'made reasonable efforts towards commercialization,' [Benedict] has not shown, even prima facie, that [GM] suppressed or concealed its invention." *Dow*, 2001 WL 1143284, *8. *See also Checkpoint*, 54 F.3d at 762.

Benedict argues on page 16 that the precise date of GM's commercialization of this invention is uncertain. That is irrelevant, as both *Dow* and *Checkpoint* held that a first inventor's commercialization completed years after the second inventor's invention date was sufficient to show the absence of concealment by the first inventor.[2] *Dow*, 2001 WL 1143284, *8; *Checkpoint*, 54 F.3d at 762.

Benedict also argues on page 16 that "GM did not file a patent application, preferring trade secrecy status instead." The Federal Circuit has recognized that the first inventor is "under no duty to file a patent application." *Dow*, 2001 WL 1143284, *7; *Checkpoint*, 54 F.3d at 763. Moreover, Benedict's trade secret argument is frivolous — GM commercialized the invention, and described it in owner's manuals. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271 (S.D. Fla. 2001) ("Articles in the public domain are not usually protected by trade secret law"), citing *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454-55 (11th Cir. 1991).

Finally, Benedict argues that GM's commercialization does not avoid concealment because the 1995 and 1996 Cadillacs did not place the invention in the possession of the public. (Benedict Opposition, p. 16.) Beyond GM's description of the invention in publicly available

---

[2] Benedict also asserts that GM's delay in commercializing the 1995 Cadillac was 42 months, implying that delay is measured from conception. (Benedict Opposition, p. 16.) Benedict again misrepresents the law. Delay is measured from the "time of making of the invention." *Dow*, 2001 WL 1143284, *7; *Checkpoint*, 54 F.3d at 762 n.6.

manuals, *Dow* expressly states that "use [of] the invention publicly, [citation omitted] within a reasonable time after first making the invention" avoids concealment. *Dow*, 2001 WL 1143284, *6. Unlike *Apotex*, which involved a secret process for making a commercial product, the DRL invention at issue was driven by GM's customers on open roads. Benedict himself testified that he determined whether GM's vehicles infringed all of the claims of the asserted patent based only on inspecting the vehicles themselves. (Exhibit W, Benedict 10/30/01 Dep., pp. 32-33.)

Benedict failed to make a prima facie case of inferential concealment.

### D. Benedict Has Failed To Present Any Evidence Of Intentional Concealment

Despite *Dow*'s holding that the standards for inferential control the situation at hand, Benedict repeatedly screams "intentional concealment." (Benedict Opposition, pp. 2, 6-7, 12-15.) In *Fujikawa,* cited in *Dow* for active or intentional concealment, the Federal Circuit held:

> Intentional suppression refers to situations in which an inventor "designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public." *Id.* (quoting *Kendall v. Winsor*, 62 U.S. (21 How.) 322, 328, 16 L.Ed. 165 (1858)).

*Fujikawa*, 93 F.3d at 1567.

Benedict cites *Apotex,* 258 F.3d at 1038 and *Paulik*, 760 F.2d at 1273-74 at page 12 of his brief. Like *Dow*, *Apotex* cites *Fujikawa* for intentional concealment on the very page cited by Benedict. *Apotex*, 254 F.3d at 1038. *Paulik* quotes the same rule from *Kendall* that *Fujikawa* quotes, again on the page cited by Benedict. *Paulik*, 760 F.2d at 1273.

Yet, Benedict does not even allege that GM met the "indefinite" delay requirement for intentional concealment. Nor can he. GM's reasonable efforts towards commercialization are antithetical to the intentional concealment standard of *Fujikawa* and *Kendall*.

Benedict instead makes up his own standard and then tries to shoe horn GM into it. Citing *Apotex*, Benedict argues on pages 4-5 (emphasis in original): "to avoid a finding of suppression or concealment, GM can attempt to rely *only* on 'disclosures . . . that made the invention publicly known, all of which took place before [Dr. Benedict's] entry into the field,' . . ." While it is true that in *Apotex* the first inventor (Merck) resumed activity before the second inventor's (Apotex's) entry into the field, *Apotex* nowhere states or even suggests Benedict's proposition of law.

First, it must be remembered that the invention of *Apotex* is a **process** kept secret after it was used to make the product commercialized. Here, the invention was **not** kept secret after commercialization. Second, both before (*Checkpoint*) and after (*Dow*) *Apotex*, the Federal Circuit has held a patent invalid where the first inventor commercialized the invention multiple **years after** the second inventor made the invention. As here, in both *Dow* and *Checkpoint*, the invention was secret until disclosed to the public upon commercialization. *Dow*, 2001 WL 1143284, *1, *2 (first inventor commercialized in September 1986, second inventor made in August 1984); *Checkpoint*, 54 F.3d at 758, 762 (first inventor commercialized in 1985, second inventor made in 1982).

Benedict also relies on a number of "interference" cases to support his proposition. Benedict Opposition, p. 4, citing *Lutzker v. Plet*, 843 F.2d 1364, 1368 (Fed. Cir. 1988) and

-8-

*Paulik*, 760 F.2d at 1273. The Federal Circuit distinguished those interference cases in the *Dow* quotation on page 3 of this Reply.

Not only does Benedict ignore the substantive test for concealment, he also misstates the nature of the issue. On page 7 of his brief, Benedict states that concealment is a question of fact. *Apotex*, however, which Benedict says "controls the analysis that the Court must perform to determine whether there is a genuine issue of material fact concerning suppression or concealment" states categorically: "Whether suppression or concealment has occurred is a question of law, which we would review *de novo*." 254 F.3d at 1036, citing *Brokaw v. Vogel*, 429 F.3d 476, 480 (CCPA 1970).

In summary, Benedict's only basis for arguing intentional concealment is the fact that GM did not publicly disclose the invention during commercial development. But Benedict cites no case supporting the proposition that the mere absence of public disclosure before commercialization constitutes intentional concealment under § 102(g). On the contrary, the Supreme Court and the Federal Circuit (*en banc*) require more. *Kendall*, 62 U.S. at 328; *Paulik*, 760 F.2d at 1273; *Fujikawa*, 93 F.3d at 1567.

Benedict has failed to make a prima facie case of intentional concealment under the controlling legal standards.

E.  **Benedict's "Prior Invention" And "Inventorship" Arguments Do Not Raise A Genuine Issue Of Material Fact**

On pages 20-23, Benedict argues that GM did not corroborate the fact that the prior art DRL system implemented on the 1995 and 1996 Cadillacs used DRLs at reduced power.

-9-

Exhibit D to GM's original memorandum expressly states that "Daytime Running Lights (DRL) for Canada shall consist of the high beams operated in the series mode." Benedict states in his own expert report that placing "two headlamps in series" is a known method "for diminishing power through an automotive headlamp mode." (Exhibit B to Benedict Opposition, p. 10.) Similarly, Exhibit X at 6, the technical specification for the passive lighting module for the 1995 Canadian Cadillacs, describes the DRL dropping resistor that enables reduced power operation of the lowbeam DRLs. (Exhibit Y, Enlargement of page 6 of Exhibit X showing DRL resistor in Canadian models.)

Benedict argues on page 21 that GM's documents do not show that the wiper activated headlamps feature "was integrated with any DRL system." This is a red herring. The claims do not mention anything about "integration" and Benedict cites no law supporting any relevance for this concept. Whatever Benedict means by "integrated," it is undisputed that both systems were always intended to operate and did operate on the same vehicle. GM's 1991 conception document (Exhibit F) clearly describes a system having DRLs, Twilight Sentinel (*i.e.*, darkness activated headlamps) and Wiper Activated Headlamps on the same car. Further, Exhibits D and E are two software specifications for the instrument panel cluster (IPC). Exhibit D is the software specifications for the DRL portion of the software for the IPC. Exhibit E is the specification for the wiper-activated headlamps portion of the IPC.[3]

---

[3] Exhibit E is dated July 30, 2001 because it was printed from a computer on that date. Copies of Exhibits D and E attached to GM's opening brief are somewhat difficult to read because they were facsimile copies. GM has obtained the original copies, and attached them to this memorandum as Exhibits D-1 and E-1. GM has also attached as Exhibit Z the directory for Exhibit E1 showing that computer file, IPELWD.601, was last modified on July 16, 1992.

Finally, Benedict includes a paragraph on page 24 arguing that GM has not identified the particular GM inventor who both conceived and reduced the DRL invention to practice. The case on which Benedict relies, *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) is inapplicable because GM did not need to conduct any testing to determine that the *invention* would work, only whether the particular software GM created would work. The 1991 conception document itself demonstrates that GM knew this invention would work.

Regardless, this argument was squarely rejected by the Federal Circuit in *Dow*. 2001 WL 1143284, *6. In *Dow*, Dow urged, as does Benedict, that 102(g) did not apply because "prior art under § 102(g) is limited to prior makings by someone who conceived the invention and reduced it to practice." *Id*. The Federal Circuit rejected this argument holding that the case law does not require "that an inventor must be the first to appreciate the patentability of the invention, and we hold that he need not be." *Id*. The court found that it was "enough that the AVI employees appreciated the fact of their invention."

Like AVI, GM has produced documentary evidence and testimony of witnesses who observed the production and testing of GM's DRL system. This testimony and documentation establishes that GM employees were aware of and appreciated that the DRL system automatically switched from reduced power DRLs to full power navigational lights either in (i) low light, or (ii) when the windshield wiper was on, or (iii) both.

On January 31, 1991, GM engineer Matt Darin prepared a Product Change Request which details GM's DRL system invention. (Exhibit F.) On February 22, 1993, prototype DRL

modules were tested. (Exhibit I at 8-13.) On August 2, 1993, Matt Darin concluded that the models were adequately tested, thus appreciating that they worked for their intended purpose.[4]

In 1992, Delco engineer James Beckley wrote the software for the DRL system of the 1996 Cadillacs. In March 1993, Mr. Beckley appreciated that GM's DRL system had the functions outlined above. (Exhibit L, Beckley Decl., ¶¶ 5, 7.) On February 4, 1994, GM employees Ron Knopka and Steve Donnelly tested GM's DRL system in a prototype vehicle and demonstrated that the system worked as intended. (Exhibits Q and S.)

Thus, GM has established that its employees appreciated the DRL system invention. As such, § 102(g) applies.

---

[4] Benedict asserts that "GM utterly failed to point to any evidence of the date Mr. Darin . . . knew the constructed design worked for its intended purpose." This assertion is false. As shown by Exhibit I, Mr. Darin reviewed the testing of the DRL modules which demonstrated that the DRL system worked for its intended purpose.

## III. CONCLUSION

Because Benedict has not raised a genuine issue of material fact, this Court should grant summary judgment of invalidity under 35 U.S.C. § 102(g).

Respectfully submitted,

**BROOKS & KUSHMAN P.C.**

_____
Ernie L. Brooks          (P22875)
John E. Nemazi          (P33285)
Frank A. Angileri        (P45611)
Thomas W. Cunningham    (P57899)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
Tel:    (248) 358-4400
Fax:    (248) 358-3351

*Attorneys for Defendant,*
*General Motors Corporation*

Date: 11/05/01

**OF COUNSEL:**

F. Townsend Hawkes (Fla. Bar #307629)
Benjamine Reid (Fla. Bar #183522)
CARLTON, FIELDS, P.A.
P.O. Drawer 190
Tallahassee, Florida  32302
Tel:   (850) 224-1585
Fax:   (850) 222-0398

# CERTIFICATE OF SERVICE

I certify that I served:

## GM's REPLY ON MOTION FOR INVALIDITY SUMMARY JUDGMENT UNDER 35 U.S.C. § 102(g)

on **November 5, 2001** by:

____ delivering

__X__ mailing (via overnight courier)

a copy to:

Binal J. Patel
Charles W. Shifley
Matthew P. Becker
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-7407
    *Counsel for Delphi Automotive Systems*

William H. Davis
WADSWORTH & DAVID, P.A.
203 Gadsden Street, Suite 1
Tallahassee, Florida 32302-2529
    *Counsel for Plaintiffs*

Raymond P. Niro
Joseph N. Hosteny
Paul C. Gibbons
Robert P. Greenspoon
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602-0733
    *Counsel for Plaintiffs*

Thomas M. Ervin, Jr.
C. Everett Boyd, Jr.
ERVIN BOYD & ALLAMAN
P.O. Box 1170
Tallahassee, Florida 32302
    *Co-Counsel for Delphi Automotive Systems*

_____
[signature]